UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SUSAN BRONSON,

    Plaintiff,

v.                                     Case No: 8:16-cv-2209-T-DNF

NANCY A. BERRYHILL, ACTING
COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.[1]

## **OPINION AND ORDER**

Plaintiff, Susan Bronson, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for Supplemental Security Income ("SSI"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed memoranda setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **REVERSED AND REMANDED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

    **I.    Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

    **A.  Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

---

[1] Nancy A. Berryhill became the Acting Commissioner of the Social Security on January 23, 2017. Pursuant to Fed. R. Civ. P. 25(d)(1), Nancy A. Berryhill is substituted as the defendant in this case.

death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

### B. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that she is not undertaking substantial gainful employment. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. § 404.1520(a)(4)(i). If a claimant is engaging in any substantial gainful activity, she will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that she is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit her physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled. 20 C.F.R. § 1520(c).

At step three, the claimant must prove that her impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii). If she meets this burden, she will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that her impairment meets or equals one of the impairments listed in Appendix 1, she must prove that her impairment prevents her from performing her past relevant work. *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of her past relevant work. 20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f). If the claimant can still perform her past relevant work, then she will not be found disabled. *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If

the claimant is capable of performing other work, she will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert ("VE"). *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that she is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

**C. Procedural History**

Plaintiff protectively filed an application for SSI on October 22, 2012, alleging a disability onset date of July 1, 1999. (Tr. 156-61). Plaintiff's application was denied initially and on reconsideration. (Tr. 47, 62). Plaintiff requested a hearing and one was held before Administrative Law Judge Richard E. Guida ("the ALJ") on July 8, 2014. (Tr. 10-32). On October 14, 2014, the ALJ entered a decision finding that Plaintiff was not disabled. (Tr. 67-74). Plaintiff requested review of this decision and the Appeals Council denied Plaintiff's request on June 6, 2016. (Tr. 1-6). Plaintiff initiated the instant action by Complaint (Doc. 1) on August 1, 2016. The parties having filed memoranda setting forth their respective positions, this case is ripe for review.

**D. Summary of the ALJ's Decision**

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 22, 2012, the application date. (Tr. 69). At step two, the ALJ found that Plaintiff had the following severe impairments: chronic obstructive pulmonary

disease and obesity. (Tr. 69). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 71).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to "perform light work as defined in 20 CFR 416.967(b) with the following limitations. The claimant must avoid even moderate exposure to fumes, odors, dusts, gases, and poor ventilation." (Tr. 71). At step four, the ALJ found that Plaintiff had no past relevant work. (Tr. 73).

At step five, the ALJ found that considering Plaintiff's age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy Plaintiff can perform. (Tr. 73-74). Relying on the testimony of a vocational expert, the ALJ found that could perform the jobs of sorter, bagger, and garment sorter. (Tr. 74). The ALJ concluded that Plaintiff was not under a disability since October 22, 2012, the date the application was filed. (Tr. 74).

**II.     Analysis**

Plaintiff raises three issues on appeal: (1) whether the ALJ's finding that Plaintiff suffered from no work limitations due to her mental impairments is supported by substantial evidence; (2) whether the ALJ erred by according little weight to the opinion of consultative psychologist Dr. Marone; and (3) whether the ALJ erred by finding that Plaintiff's breathing problems did not meet or equal a listing for respiratory disorders. The Court will begin with Plaintiff's third raised argument.

Plaintiff argues that the ALJ erred in determining whether Plaintiff met a listing under Listing 3.00, specifically by improperly rejecting the validity of the spirometric pulmonary function tests. (Doc. 19 p. 14). Defendant responds that the ALJ properly found that Plaintiff's

pulmonary function tests were invalid based on the opinion of state agency medical consultant David Guttman, M.D. (Doc. 24 p. 11).

Listing 3.00 provides that

> [s]pirometry, which measures how well you move air into and out of your lungs, involves at least three forced expiratory maneuvers during the same test session A forced expiratory maneuver is a maximum inhalation followed by a forced maximum exhalation, and measures exhaled volumes of air over time. The volume of air you exhale in the first second of the forced expiratory maneuver is the $FEV_1$. The total volume of air you exhale during the entire forced expiratory maneuver is the FVC. We use your highest $FEV_1$ value to evaluate your respiratory disorder under 3.02A, 3.03A, and 3.04A, and your highest FVC value to evaluate your respiratory disorders under 3.02B, regardless of whether the values are from the same or different forced expiratory maneuvers.

20 C.F.R. Pt. 404, Subpt. P., App. I, § 3.00E.

The record shows that the SSA sent Plaintiff for pulmonary function testing on March 13, 2013. (Tr. 335). The test indicated that Plaintiff understood the directions, was cooperative, and expended maximal effort. Her results indicated $FEV_1$ readings of .75, .73 and .77 on three trials pre medication. Her $FEV_1$ readings after medication were .90, .98, and .97. (Tr. 335). The technician indicated that she gave good effort and the results were acceptable and reproducible. (Tr. 336). Dr. Stone was the supervising physician. (Tr. 336).

On April 10, 2013, SSA sent Plaintiff for a second round of pulmonary function tests. (Tr. 352). Again, it was noted that she understood the directions, was cooperative and expended maximal effort. Her $FEV_1$ results pre-medication were .74, .78 and .85. Her $FEV_1$ scores after medication were 1.02, 1.01, and 1.06. (Tr. 352). Again, the technician noted that Plaintiff gave good effort, and the results were acceptable and reproducible. (Tr. 353).

State agency medical evaluator David Guttman, M.D., reviewed these tests on May 8, 2013, and noting that "4/10/13 PFT and 3/13/13 PFT results seem to meet listing 3.02. However,

these tests are invalid as the peak flow was not achieved early in expiration, and the spirograms do not have a smooth contour with gradually decreasing flow throughout the expiration." (Tr. 59).

In his decision, the ALJ explained his finding that Plaintiff did not meet a listing as follows:

> The undersigned has considered the requirements of Section 3.02 (chronic pulmonary insufficiency) of the Listing of Impairments contained in 20 CFR Part 404, Appendix 1 to Subpart P. However, the objective medical evidence does not support a conclusion that impairments rise to listing-level severity. Pulmonary function tests in March and April 2013 showed FEV1 results of less than 1.00 (Exs. 7F and 9F). Although these results could be considered listing level, the state agency medical consultant opined that these tests were invalid because the peak flow was not achieved early in expiration and the spirograms did not have a smooth contour with gradually decreasing flow throughout expiration (Ex. 4A at 11). The undersigned agrees with the state agency medical consultant that the claimant's impairment does not meet the requirements of Listing 3.02.

(Tr. 71).

The ALJ always has a basic duty to develop a full and fair record. *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995). Here, the Court finds that the ALJ erred by failing to fully and fairly develop the record as to whether Plaintiff met a listing. The record contains two pulmonary function tests that, by the ALJ's own statement, establish that Plaintiff met a listing. These tests indicate that Plaintiff gave good effort and that the results were acceptable and reproducible. (Tr. 336, 353). There is no indication that Plaintiff attempted to "cheat" these tests in any way or that she did not follow the directions of the technician and supervising physician who administered the test. Assuming arguendo that substantial evidence supports the ALJ's decision to disregard these test results as invalid based on Dr. Guttman's opinion, the fact remains that there are no valid pulmonary function tests in the record. Rather than deny Plaintiff's claim, the Court finds that the appropriate action would have been to have Plaintiff re-tested. The ALJ's failure to do so constitutes reversible error.

As the Court finds that the ALJ erred at step three by failing to fully develop the record, the Court defers at this time from addressing Plaintiff's arguments concerning the ALJ's RFC findings.

### III. Conclusion

The decision of the Commissioner is **REVERSED AND REMANDED** pursuant to sentence four of Section 405(g). The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on September 20, 2017.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties